## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ASDRUBAL SIMON MATA-CABELLO** | **CASE No.  20-1687** |
| Petitioner, | |
| v. | |
| **TAILI TEE THULA,** | |
| Respondent | |

## VERIFIED PETITION FOR RETURN OF CHILDREN TO PETITIONER AND PETITION FOR IMMEDIATE ISSUANCE OF SHOW CAUSE ORDER TO RESPONDENT

TO THE HONORABLE COURT:

### I.  Preamble

1.      This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention"), and the International Child Abduction Remedies Act[2] (hereinafter "ICARA") 42 U.S.C. 11601 et seq.  The Convention came into effect in the United States of America on July 1, 1988 and was also ratified by Colombia.

2.      The objects of the Convention are as follows:  (1) to secure the immediate return of a child wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.  Convention, Art. 1.[3]

---

[1]  T.I.A.S. No. 11,670, at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).

[2]  42 U.S.C. 11601 et seq. (1995).  ICARA was created to deal with the sudden abduction of children and to allow a petitioner to assert his or her rights in exigent circumstances.  See Distler v. Distler, 26 F. Supp. 2d 723, 727 (D.N.J. 1998).

[3]  As has been stated by other courts addressing Hague cases, the Convention therefore authorizes a federal district court to determine the merits of the abduction claim but does not allow it to consider the merits of any underlying custody dispute.  Morris v. Morris, 55 F. Supp. 2d 1156, 1160 (D. Colo. 1999) (recognizing that "[p]ursuant to Article 19 of the

TOWS01:7072379|000001-#BRCH3

## II. Jurisdiction

3.       This Court has jurisdiction pursuant to 42 U.S.C. § 11603 (1995)[4] because this case involves the removal and retention of a child under the age of sixteen from his habitual residence in Colombia to the United States of America.[5]

## III. Status of Petitioner and Child

4.       Asdrúbal Simon Mata-Cabello, the Petitioner, and Taili Tee Thula, the Respondent, are the natural parents of Alanna Isabel Mata Thula and Joakim Asdrúbal Mata-Thula, infants who were born respectively in San Juan, Puerto Rico on July 27, 2016 and May 12, 2013.  A copy of the Certificates of Birth issued by the Department of Health of the Commonwealth of Puerto Rico are attached hereto as **Exhibits I** and **Exhibit II**.

5.       The children were living with Petitioner and Respondent at their residence in Bogotá, Colombia since they had joint custody.  Thus, the children's immediate habitual residence was at Street 82# 9-79, Apartment 301, Bogotá, Colombia before they were wrongfully removed to Puerto Rico.[6]

---

Convention, [this Court has] no power to pass on the merits of custody"); see also Currier v. Currier, 845 F. Supp. 916 (D. N.H. 1994) citing Friedrich v. Friedrich, 983 F.2d 1396, 1399 (6th Cir. 1993); Meredith v. Meredith, 759 F. Supp. 1432, 1434 (D. Ariz. 1991).  The court's role is not to make traditional custody decisions but to determine in what *jurisdiction* the child should be physically located so that the proper jurisdiction can make those custody decisions. Loos v. Manuel, 651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994).

[4]   A court considering an ICARA petition has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying custody dispute.  The Hague Convention is intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court.  Lops v. Lops, 140 F.3d 927, 936 (11th Cir. 1998) (citations omitted).

[5]   Toren v. Toren, 191 F. 3d 23 (1999).

[6]   "Courts in both the United States and foreign jurisdictions have defined habitual residence as the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose for the child's perspective."  Pesin v. Rodriguez, 77 F. Supp. 2d 1277, 1284 (S.D. Fl. 1999) (citations omitted), aff'd, Pesin v. Rodriguez, 244 F.3d 1250 (11th Cir. 2001); Morris at 1161 ("the law requires [the Court] to focus on the child in determining habitual residence"); see also In re Robinson, 938 F. Supp. 1339, 1341-42 (D. Colo. 1997).  It is a state of being or state of mind.  Habitual residence is the permanent physical residence of the child as distinguished from their legal residence or domicile. In Re Bates, No. CA 122-89, High Court of Justice, Family Div., England, February 23, 1989; Brook v. Willis, 907 F. Supp. 57, 61 (S.D.N.Y. 1995); Loos, 651 A.2d at 1080 (stating that it is immaterial that the

2

6.      On February 10, 2020 Respondent Taili Tee Thula withdrew aforementioned children from the school they were attending in Bogota, Colombia in the middle of the academic year.  (**Exhibit III**).

7.      On February 11, 2020 Respondent Taili Tee Thula abandoned her habitual residence in Bogotá, Colombia with the children while the Petitioner was traveling on a business trip and was unaware of the aforestated; and certainly did not consent to such removal from Colombia.  Moreover, Taili Tee Thula emptied the joint bank account that contained approximately $100,000.00, the full amount of the couple lifelong savings; and she also made withdrawals from other accounts in the amount of approximately $4,000.00.

8.      Petitioner, Respondent and their children had been living in Bogotá, Colombia since the year 2018 when Petitioner employment in Puerto Rico was terminated and an employment opportunity opened up in Bogota, Colombia.

9.      At present, Respondent and the children are living at 43 Calle Príncipe Alberto, Estancias Reales, Guaynabo, Puerto Rico  00969.

---

concept of habitual residence lacks precision); see also T.B. v. J.B., 2000 WL 1881251, at *1 (Supreme Court of Judicature, England, December 19, 2000) (stating that it is important to remember that the Convention is concerned with the return of child to the country of their habitual residence and not with their return to any particular person).

In Darín v. Olivero, 746 F3d1, 8 (1st Cir. 2014), the Court held:

> "[4] With regard to the district court's determination of habitual residence in particular—after finding no operative First Circuit case—we have considered, and find helpful, the Seventh Circuit's approach. That court stated:  "determinations of intent involve questions of fact and we will defer to the district court's findings on intent unless they are clearly erroneous", while "[t]he ultimate determination of habitual residence is a mixed question of law and fact to which we will apply de novo review." Koch v. Koch, 450 F.3d 703, 710 (7th Cir. 2006). Seeing no reason to depart from this approach, we now adopt it."

[7] "Article 3 of the Hague Convention provides that the removal or retention of a child is wrongful where it violates the custody rights of another person that were actually being exercised at the time of the removal or retention or would have been exercised but for the removal or retention."  Lops at 935; "[t]he removal of a child from the country of his or her habitual residence is 'wrongful' under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the child under that country's law at the moment of removal." Friedrich v. Friedrich,  78 F.3d 1060, 1064 (6th Cir. 1996); see Prevot v. Prevot, 59 F.3d 556 (6th Cir. 1995); Convention, art. 3.

10.    Since the children are under the age of sixteen years and were removed by Respondent from their habitual residence in breach of Petitioner's custody rights, which rights he was exercising at the time of the wrongful removal[7] or wrongful retention[8] of the children, the Petitioner has an entitlement to the civil remedies provided by the Convention.

11.    Petitioner has never acquiesced or consented to the retention of the children in Puerto Rico.

12.    Petitioner was actually exercising custody rights within the meaning of Articles Three and Five of the Convention,[9] in that he is the father of the aforementioned children and has exercised custody rights over them since they were born.  Furthermore, the children were habitually residents of Colombia within the meaning of Article 3 of the Convention since April 20, 2008 until their wrongful removal from Colombia on February 11, 2020.

13.    A Request for Return of the children was filed with the United States Department of State.[10]  (**Exhibit IV**).

---

[7]  "Article 3 of the Hague Convention provides that the removal or retention of a child is wrongful where it violates the custody rights of another person that were actually being exercised at the time of the removal or retention or would have been exercised but for the removal or retention."  Lops at 935; "[t]he removal of a child from the country of his or her habitual residence is 'wrongful' under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the child under that country's law at the moment of removal."  Friedrich v. Friedrich,  78 F.3d 1060, 1064 (6th Cir. 1996); see Prevot v. Prevot, 59 F.3d 556 (6th Cir. 1995); Convention, art. 3.

[8]  "Wrongful retention" occurs when it is in breach of rights of custody attributed to a person under the law of the country in which the child was habitually resident immediately before the retention; and at the time of retention these rights were actually exercised, or would have been so exercised, but for the wrongful retention.  Convention, art. 3; Feder, 63 F.3d at 225; Wanninger v. Wanninger, 850 F. Supp. 78, 80-81 (D. Mass. 1994).

[9]   The issue of "custody" must be addressed under Colombia law.  Pesin, 77 F. Supp. 2d at 1284; see also Whallon v. Lynn, 230 F.3d 450 (1st Cir. 2000); Friedrich v. Friedrich, 983 F.2d at 1402; Ohlander v. Larson, 114 F.3d 1531, 1541 (10th Cir. 1997) (stating that the Convention was meant, in part, to lend priority to the custody determination hailing from the child's state of habitual residence.  Pursuant to Article 14 of the Convention, this Court "may take notice directly of the law of . . . the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law . . . ."  See also Fed. R. Civ. P. 44.1.

[10]   Given the urgency of this Hague Convention Petition, no authentication of any documents or information included with the Petition is required.  42 U.S.C. § 11605 (1995).

4

14.     Since the wrongful removal of the children from Colombia and their illegal retention in Puerto Rico, Respondent has impeded the communication with the children, has refused to provide her cell phone number and has blocked all communications with the children.

## V.  Provisional Remedies[11]

15.     Petitioner requests that the Court issue an order to show cause and direct that the order be served immediately on Taili Tee Thula and that she be brought before this Court with the children forthwith.[12]  Section 5(b) (Provisional Remedies) of ICARA provides, *inter alia*, that, in a proceeding under Section 4(b) for the return of a child, "No court exercising jurisdiction may order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied."  42 U.S.C. § 11604.  In this case, the State law referred to in Section 5(b) is that of Puerto Rico.  Local law authorizes this Court to order the appearance of the children and custodian or custodians *together*.  Id.  This Court therefore has the authority to order the immediate appearance of Taili Tee Thula and the children together.

16.     Petitioner requests, for the wellbeing of Alanna Isabel Mata-Thula and Joakim Asdrúbal Mata-Thula, the children, that he be given immediate access to them, pending further hearings in this Court.

17.     Pending further hearing in this Court, it is requested that this Court issue an immediate order prohibiting the removal of Alanna Isabel Mata-Thula and Joakim Asdrúbal Mata-

---

[11]   This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition"  42 U.S.C. 11604 (1995).

[12]    Such an approach is consistent with the approach of other district courts faced with equivalent concerns regarding the flight of a respondent following service of a petition for return under the Convention.  See Fawcett v. McRoberts, 168 F. Supp. 2d 595, 597 (W.D. Va. 2001).

Thula from the jurisdiction of this Court, taking into safe-keeping all of the children's travel documents and setting an expedited hearing on the Petition for the Return of Children to Petitioner.[13]

### VI.  Relief Requested

18.    **WHEREFORE**, Petitioner respectfully requests the following relief:

a.    an Order directing that the name of the children be entered into the national police computer system (N.C.I.C.) missing person section;

b.    an Order directing the prompt return of the children to their habitual residence in Colombia;

c.    the issuance of an Order directing that Taili Tee Thula, together with Alanna Isabel Mata-Thula and Joakim Asdrúbal Mata-Thula, be brought into this Court by any United States Marshal, federal officer or police officer;

d.    the issuance of an immediate Order prohibiting the removal of the children from the jurisdiction of this Court;

e.    an Order commanding Taili Tee Thula to show cause why the children have been kept from his father in contravention of Colombia law;

f.    an Order directing Taili Tee Thula to pay Petitioner's legal costs and fees; and

g.    any such further relief as justice and this case may require.

### VII.  Attorneys' Fees and Costs Including Transportation Expenses Pursuant to Convention Article 26 and U.S.C. 11607

18.    Petitioner has incurred in substantial expenses as a result of the wrongful removal of the children by Taili Tee Thula.  Petitioner will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of this wrongful removal and retention.

---

[13]  Such a Petition may also be treated as an application for a Writ of Habeas Corpus itself.  Zajaczkowski v. Zajaczkowska, 932 F. Supp. 128, 132 (D.Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus . . . pursuant to 28 U.S.C.A. § 2243").; see also In re McCullough, 4 F. Supp. 2d 411 (1998).

19.     Petitioner respectfully requests that this Court award all legal costs and fees incurred to date as required by 42 U.S.C. 11607, reserving jurisdiction over further expenses.

## VIII.  Declaration Pursuant to Uniform Child Custody Jurisdiction and Enforcement Act

20.     The details required to be provided under the UCCJEA are as follows:

- The present forced location of Alanna Isabel Mata-Thula and Joakim Asdrúbal Mata-Thula is 43 Calle Príncipe Alberto, Estancias Reales, Guaynabo, Puerto Rico  00969.

- In the last two (2) years until February 11, 2020, Alanna Isabel Mata-Thula and Joakim Asdrubal Mata-Thula had lived with the Petitioner in Bogota, Colombia.

- Petitioner have information of a custody proceeding concerning the children filed on February 20, 2020 in the Commonwealth of Puerto Rico, San Juan Part under civil number SJ2020RF00274 which was dismissed on October 30, 2020 on account of a lack of subject matter jurisdiction.

- Petitioner does not know of any person or institution not a party to these proceedings who has physical custody of the children or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with, the children.

**RESPECTFULLY SUBMITTED.**

At San Juan, Puerto Rico, this 1st day of December, 2020.

*s/Rubén T. Nigalglioni*

RUBÉN T. NIGAGLIONI
USDC-PR No. 119901

NIGAGLIONI LAW OFFICES, P.S.C.
ATTORNEYS FOR PETITIONER
P.O. BOX 9023865
SAN JUAN, PUERTO RICO 00902-3865
TEL:   787-765-9966
FAX:   787-751-2520
rtn@nigaglionilaw.com

## **VERIFICATION**

I, Asdrubal Simon Mata-Cabello, hereby declare under penalty of perjury that I have read the contents of the foregoing Petition and that the facts set forth therein are true to the best of my recollection, knowledge, information and belief.

_____                               _____

       Date

9