IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ASDRUBAL SIMON MATA-CABELLO,** *Petitioner,* v. **TAILI TEE THULA,** *Respondent.* | CIVIL NO. 20-1687 (DRD) |

**OPINION AND ORDER**

Pending before the Court is Respondent's *Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Process, Insufficient Service of Process, or in the alternative, Motion to Dismiss pursuant to the Abstention Doctrine.* (Docket No. 18). On January 25, 2021, Petitioner filed an *Opposition* to the Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Process, Insufficient Service of Process, or in the alternative, Motion to Dismiss pursuant to the Abstention Doctrine. (Docket No. 22). On February 1, 2021, Respondent filed a *Reply* to the Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Process, Insufficient Service of Process, or in the alternative, Motion to Dismiss pursuant to the Abstention Doctrine. (Docket No. 24).

For the reasons stated herein, the Court **GRANTS** Respondent's *Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Process, Insufficient Service of Process, or in the alternative, Motion to Dismiss pursuant to the Abstention Doctrine.* (Docket No. 18).

**A. Personal Jurisdiction due to Insufficient Process and Insufficient Service of Process**

Fed. R. Civ. P. 4(e)(1) allows for a plaintiff to serve an individual within a judicial district of the United States by, inter alia, "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Rule 4.6 of the Rules of Civil Procedure for the Commonwealth of Puerto Rico allows for service by publication in limited circumstances. *U.S. Nat'l Bank Ass'n v. Estate of Galarza*, 291 F.Supp. 3d 238, 241 (D.P.R. 2018)[1]. Service by publication is permitted in cases where the defendant is hiding, is unknown, or for whatever reason cannot be located despite due diligence. P.R. Laws Ann. tit. 32, App. III R. 4.6. To obtain such a remedy, the plaintiff must show, through an affidavit, "vigorous steps and honest effort in attempting to personally serve the defendant." *Pagan v. Rivera Burgos*, 113 D.P.R. 750 (1983). "The degree of diligence required will depend on the particular circumstances of each case, taking into account all of the plaintiff's reasonably available resources to locate the defendants." *Lanzó* Llanos *v. Banco* de la Vivienda, 133 D.P.R. 507, 515 (1993).

The timing of service of process is governed by Fed. R. Civ. P. 4(m), which states:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

*See* Fed. R. Civ. P. 4(m)(emphasis ours).

---

[1] The Court acknowledges that in the case of *U.S. Nat'l Bank Ass'n v. Estate of Galarza* the efforts by Plaintiff's process server consisted of four visits and the Court deemed that Plaintiff failed to demonstrate "vigorous and honest efforts" in locating defendants. However, the instant case occurred in the midst of the COVID-19 Pandemic and service of process was considered time sensitive, as it involved minor children and visitation rights with their father who was visiting Puerto Rico at the time.

The explicit language of Fed. R. Civ. P. 4(m) instructs the court to provide additional time for service if there is good cause for a plaintiff's failure to effect service within 90 days after filing the complaint. The plaintiff has the burden to establish good cause. *Rivera v. Nissan Manufacturing Co.*, 788 F.2d 819, 821 (1st Cir. 1986). The First Circuit has held that evasion of service by the defendant constitutes a valid good cause for failure to serve, and plaintiff is not required to attempt service by publication in order to avoid dismissal. *Ruiz Varela v. Sanchez Velez*, 814 F.2d 821 (1st Cir. 1987); *See also U.S. v. Tobbins*, 483 F. Supp. 2d 68 (D. Mass. 2007)(finding good cause existed because plaintiff acted diligently and defendant may have been evading service).

The following facts are undisputed and form part of the record:

1. On December 7, 2020, summonses were issued by the Clerk of the Court on an expedited basis. (Docket No. 3).

2. On December 7, 2020, at 12:49 p.m. Mr. William Agosto-Marrero, a process server received the complaint and summons and at 1:28 p.m. was refused entrance to the gated community of Estancias Reales where Respondent resides by the security guard María Morales Cruz unless he was accompanied of a marshal or a policeman. (Docket No. 4, Exhibit 1).

3. On that same day, Mr. Agosto Marrero requested help from the police station in Guaynabo to gain access to the aforementioned gated community, but was informed by Sergeant Arteaga (badge No. 166417) that on account of the COVID-19 lockdown, the police did not provide escort services as requested by Mr. Agosto Marrero. *Id.*

4. On December 8, 2020, at approximately 4:44 p.m, Mr. Agosto Marrero gained access to the gated community and was able to reach the residence located at Principe Alberto Street, number

43 of Estancias Reales in Guaynabo. Once at the front of Respondent's residence, Mr. Agosto Marrero saw someone looking through a window at the second floor of the residence, but no person answered the doorbell ring. Therefore, process of service could not be completed on that day. (Docket No. 6, Exhibit 1).

5. On December 9, 2020, at approximately 11:16 a.m., Mr. Agosto Marrero attempted for the third time to serve process upon Respondent and again no one responded to the doorbell ringing although Mr. Agosto-Marrero heard people talking in the house before he rang the doorbell. Again, service of process was unsuccessful. *Id.*

6. On account of the afore stated, which is clearly stated in Mr. Agosto-Marrero's statements under the penalty of perjury dated December 8 and 10, 2020, Mr. Agosto Marrero concluded that Respondent was hiding to avoid service of process. (Docket Nos. 4 and 6).

7. On December 11, 2020 at Petitioner's request, the Court ordered that the Respondent be served by publication as authorized by Rule (4)(e)(1) and Rule 4.6 respectively of the of Federal Rules of Civil Procedure and Rule 4.6 of the Puerto Rico's Rule of Civil Procedure. (Docket Nos. 4 and 9).

8. On December 15, 2020, the Court directed the issuance of a summons to serve Respondent by publication. (Docket No. 13).

9. On December 16, 2020, the Clerk of the Court issued the summons for service by publication. (Docket No. 14).

10. On December 24, 2020, the summons was published in El Nuevo Día newspaper. (Docket No. 15, Exhibit 1).

11. On December 28, 2020, as directed by the Court and as required under Rule 4.6 of Puerto Rico Rules of Civil Procedure, a copy of the complaint and the summons was sent by certified mail to Respondent's last known address at Calle Príncipe Alberto number 43, Estancias Reales in Guaynabo, Puerto Rico 00969. (Docket No. 15, Exhibit 2).

12. On January 11, 2020 Respondent filed the motion to dismiss and participated through counsel for the hearing held by video conference on that date. (Docket Nos. 18 and 21).

Respondent argues that Petitioner has not shown that it engaged in "vigorous steps and honest efforts" to serve the Respondent personally. (Docket Nos. 18 and 24). Specifically, Respondent argues that the process server of the Petitioner only visited the residence three (3) times in a span of three days, December 7th, 8th, and 9th of 2020 and that he Petitioner's efforts do not go beyond the generalities and stereotypical allegations that the Puerto Rico Supreme Court has deemed insufficient to warrant service by publication. (Docket No. 18 at 7). However, the facts of the attempts to serve process unsuccessfully on Respondent were presented in an unsworn statement under penalty of perjury by Mr. William Agosto-Marrero in two statements dated December 8th and 10th, 2021 based on facts personally known to him. (Docket Nos. 4 and 6).

Respondent's argument is not that service by publication was carried out was defective in any manner, but rather that there was inadequate service of process as to Mr. Agosto-Marrero's efforts to serve the Respondent on three different occasions. Rule 4.6 does not state how many unsuccessful attempts to serve process are required before service by publication is allowed. Rule 4.6 requires a court to use its discretion to determine if service by publication is allowed based on the declarations of an uninterested third party. Therefore, when the Court

issued the December 11, 2020 order to serve process on Respondent by publication, it exercised its discretion as permitted by Rule 4.6 after evaluating Mr. Agosto- Marrero's statements under penalty of perjury and taking into account the existence of the COVID-19 pandemic together with the nature of the suit.

**B. Abstention Doctrine**

Even though, the Court disagrees with Respondent analysis as to service of process, the Court agrees with Respondent's analysis as to the abstention doctrine as an appropriate ground for dismissal without prejudice. Respondent argues that this Court should abstain and dismiss the instant case due to the fact that this Hague Convention Petition has been raised and is <u>currently being litigated</u> by both parties in a parallel case before the Puerto Rico Courts for the past fourteen (14) months, before the First Instance Court of San Juan under the Case No. SJ2020RF00274 and the Puerto Rico Court of Appeals under the Case No. KLAN202001039. (Docket No. 18 at 2); *See also* Docket No. 27, Exhibit 1; *See also* Docket No. 34.

The Respondent filed a Petition pursuant to the Convention on the Civil Aspects of International Child Abduction under the The Hague on October 25th, 1980 ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 USC sec. 9001 *et seq* before the local Puerto Rico Courts. Both Petitioner and Respondent requested remedies pursuant to the Hague Convention and ICARA before the Puerto Rico Courts. In the instant case, the following facts are undisputed as to the procedural background of the parallel state case:

1. On February 20, 2020, Respondent filed a Complaint against the Petitioner before the Puerto Rico Courts. (Docket No. 18, Exhibit 1). Said Complaint raises the following causes of action: divorce, custody of minors, child support, the Act of Prevention and Intervention of Domestic

Violence and protection pursuant to the Convention on the Civil Aspects of International Child Abduction under the The Hague on October 25th, 1980 ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 USC sec. 9001 *et seq.*

2. On February 26, 2020, Petitioner appeared and submitted himself to the jurisdiction before the Puerto Rico Courts. Specifically, the Petitioner waived to be served and submitted himself to the jurisdiction voluntarily. (Docket No. 18, Exhibit 2).

3. On March 6, 2020, the Petitioner filed a motion to dismiss arguing that the Puerto Rico Courts does not have jurisdiction over the divorce cause of action because the Respondent did not comply with the one-year residency requirement pursuant to Article 97 of the Puerto Rico Civil Code, 31 LPRA sec. 331. (Docket No. 18, Exhibit 3).

4. On March 9, 2020, the Respondent opposed the motion to dismiss and informed the Court that the Puerto Rico Courts have jurisdiction because the domicile of Respondent and Petitioner is Puerto Rico. Specifically, Article 97 of the Puerto Rico Civil Code, 31 LPRA sec. 331 allows divorce actions to proceed if the domicile of the parties is Puerto Rico, regardless of the one-year residency requirement. (Docket No. 18, Exhibit 4).

5. On November 4, 2020, the First Instance Court of San Juan issued a judgment dismissing Respondent's complaint in its entirety under the interpretation of Article 97 of the Puerto Rico Civil Code, 31 LPRA sec. 331, and determined that it did not have jurisdiction of the Complaint because it understood that Respondent did not meet the one-year residency requirement. (Docket No. 18, Exhibit 5).

6. On November 19, 2020, the Respondent filed a timely motion for reconsideration as to the state dismissal, in which Respondent argued First Instance Court of San Juan reconsider its

decision as to the divorce cause of action because the domicile of both the Petitioner and Respondent is Puerto Rico. (Docket No. 18, Exhibit 6.) [2]

7. On November 25, 2020, the First Instance Court of San Juan denied Respondent's motion for reconsideration. (Docket No. 18, Exhibit 7).

8. On December 28, 2020, the Petitioner filed a timely appeal to the Puerto Rico Court of Appeals. Petitioner requested the Puerto Rico Court of Appeals to reverse the First Instance Court Judgment and subsequently order the First Instance Court to not only attend the divorce cause of action, but also hold an evidentiary hearing regarding Respondent's Petition pursuant to the Hague Convention and ICARA. (Docket No. 18, Exhibit 8). [3]

9. On March 12, 2021 the Puerto Rico Court of Appeals entered a Resolution (Docket No. 34-1) returning the case to the Superior Court for further proceedings. In its pertinent part, the Puerto Rico Court of Appeals stated the following:

> Notwithstanding, in the case under consideration other controversies emanating from our Civil Code are intertwined, as well as the provisions of the Hague Convention on the Civil Aspects of International Child Abduction, that require an examination regarding jurisdiction.
>
> Regarding this particular matter, and as part of her allegations, the petitioner sustains that the evidence presented by her fulfilled the elements to certify Puerto Rico as the habitual residence of her and her minor children. To this end, she insists that the courts of Puerto Rico possess the jurisdiction to resolve all the civil actions that she presented in her complaint, in accordance with the provisions of the Hague Convention. She alleges

---

[2] The Respondent reserved her right by arguing to the First Instance Court of San Juan that the Court could not summarily dismiss the complaint in its entirety which included allegations of the Hague Convention and ICARA. The Respondent reminded the Court that even though it dismissed the divorce cause of action, the First Instance Court still has jurisdiction to evaluate Respondent's Petition pursuant to the Hague Convention and ICARA. *See also* Puerto Rico Court of Appeals Resolution for case KLAN202001039 at p. 3 (Docket No. 34-1) ("Specifically, whether jurisdiction and remedies existed based upon the provisions of the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act.")

[3] Even though the Reply at Docket No. 24 p.4 states that Panel V consisted of Judge Dominguez Irizarry, the daughter of the undersigned Judge, amongst a total of five judges, Judge Dominguez Irizarry recused herself and did not participate in adjudication of the case.

> that the CFI was obligated to adjudicate the controversies related to said treaty and to address in an urgent and expedited manner the complaint regarding child support.
>
> No (evidence) emerges from the record that, at the time of the filing of the complaint and its adjudication, there may exist an intervention from a local, state, or foreign forum exercising its jurisdiction and competence. There is no evidence either of a full and evaluating process having taken place to elucidate the allegations related to the Hague Convention parameters and the *Monasky v. Taglieri.*
>
> Notwithstanding, following a thorough examination of the case under consideration, we become aware that of all the claims presented by Mrs. Thula in her complaint, the first instance forum only addressed the petition for divorce. Specifically, the recurred forum decided to dismiss the petition for divorce, after concluded that it lacked the jurisdiction to address it on its merits, under the guidelines of Article 97 of the Civil Code, *supra.* Notwithstanding, regarding the controversy related to the Hague Convention on the Civil Aspects of International Child Abduction, the CFI kept its silence. Neither did it examine whether it had jurisdiction to address the other grounds presented, related to the petition for custody of the minor children, the setting of child support in their favor.
>
> Given the above, and having applied the normative outlined based on the facts of the case under consideration, we can conclude that the *Sentence* issued by the forum *a quo* was not final, given that it did not resolve all the juridic controversies the Judge had under his consideration. Also, we cannot determine that it is a partial sentence, since the CFI did not fulfil its requirement of stating the sacramental word mandated by Rule 42.3 of Civil Procedure, *supra*, to give finality to the partial ruling so issued. Consequently, we can deduce that we have before us an interlocutory resolution subject to review via a *certiorari* recourse. Thus, we are not in a position to review the Sentence hereby recurred via an appeal, insofar as it is not a final ruling.

10. The Puerto Rico Court of Appeals held the following: "Therefore, bearing in mind that the ruling issued by the CFI had the effect of dismissing the complaint in its totality, without having addressed and resolved all the claims under their consideration, we issue the writ of *certiorari* and we order the continuation of the proceedings. <u>The CFI is instructed to determine whether it has jurisdiction over the matter o[r] the authority to address the whole matter under the protection of the Hague Convention on the Civil Aspects of International Child Abduction and the 'International Child Abduction Remedies Act.'</u> If said forum were to determine that it has the authority over the above cited laws, it shall resolve: (1) whether Puerto Rico is the habitual

9

resident of the minor children procreated by the parties, and (2) establish a provisional legal precedent related to custody, parent-child relationships, provisional child support and *litis expensas.* For all the above, the writ of *certiorari* requested is issued, we revoke the recurred ruling and the case is returned to the Court of First Instance for the continuation of the procedures, in accordance to that which is hereby resolved." *See* Puerto Rico Court of Appeals Resolution for case KLAN202001039 at pp.11-12 (Docket No. 34-1).

Petitioner filed the instant Petition pending before this Court on December 4, 2020, at a time **after** the reconsideration was denied on November 25, 2020 and **before** the appeal was filed in the state proceedings on December 28, 2020. (Docket No. 1).

Younger Abstention

*Younger v. Harris*, 401 U.S. 37 (1971), established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding.[4] Three requirements must be met before *Younger* abstention is appropriate: (1) there must be an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding may interfere, (2) the state proceedings must implicate important state interests, and (3) the state proceedings must afford an adequate opportunity to raise the claims. *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 843 (3d Cir. 1996). Where the Hague Convention Petition has been raised and litigated in the state court, abstention by the federal court has generally been found to be appropriate. *Copeland v. Copeland*, 134 F.3d 362, 1998 WL 45445 (4th Cir. 1998)

---

[4] Even though the principle in *Younger* occurs in a criminal proceeding, the principle has been extended to civil proceedings. *Moore v. Sims,* 442 U.S. 415 (1979), *Williams v. Red Bank Board of Education*, 662 F.2d 1008, 1017 (3d Cir. 1981) (overruled on other grounds as recognized in *Schall v. Joyce*, 885 F.2d 101, 108 (3d Cir. 1989), *Yang v. Tsui*, 416 F.3d 199, 201 (3rd Cir. 2005).

(table), *Cerit v. Cerit*, 188 F. Supp. 2d 1239 (D. Haw. 2002), *Yang v. Tsui*, 416 F.3d 199, 201 (3rd Cir. 2005). [5]

In the instant case, the first prong is satisfied because there must be an ongoing state judicial proceeding wherein the federal plaintiff is a party and federal law is authorized in state concurrent jurisdiction. As illustrated in Exhibits 1-7, the Respondent and Petitioner have been litigating for the past fourteen (14) months before the Puerto Rico Courts. Specifically, the Respondent and the Petitioner have both raised the Hague Convention and ICARA before the Puerto Rico Courts in several occasions. [6] The second prong, in that the state proceedings must implicate important state interests, is satisfied because Respondent has raised numerous domestic relations (such as domestic violence and child custody) claims along with the Hague Convention and ICARA Petitions which are inextricably linked with the Hague Convention and ICARA Petitions. Finally, the third prong, in that there is an adequate opportunity in the state proceeding to raise the federal issues, is satisfied because ICARA explicitly vests concurrent jurisdiction over Hague Convention claims in federal and state courts. *See* 42 U.S.C. § 11603(a).

---

[5] In a situation where there is a state court custody proceeding and a petition is filed in federal court under the Hague Convention, <u>but the Hague Convention has not been raised, or raised but not litigated, in the state court</u>, the federal court has generally found that abstention is not appropriate. *See Von Kennel Gaudin v. Remis*, 415 F.3d 1028, 2005 U.S. App. LEXIS 14441, No. 03-15687, 2005 WL 1661593 (9th Cir., July 18, 2005), Holder v. Holder, 305 F.3d 854 (9th Cir. 2002); *Silverman v. Silverman*, 267 F.3d 788 (8th Cir. 2001); Lops v. Lops, 140 F.3d 927 (11th Cir. 1998); Hazbun Escaf v. Rodriquez, 191 F. Supp. 2d 685 (E.D.Va. 2002).

[6] Respondent raised the Hague Convention and ICARA subject matter in her Petition filed on February 20, 2020 (*See* page 9-10 of Exhibit 1). Petitioner submitted himself to the jurisdiction of the Puerto Rico Courts and raised the Hague Convention and ICARA subject matter in his Motion filed on March 6, 2020 (*See* Exhibits 2 and pages 5-13 of Exhibit 3). Even though the First Instance Court of San Juan did not make any determination whatsoever as to the Petition under the Hague Convention and ICARA, the Respondent filed a timely Motion for Reconsideration and timely Appeal to request the Puerto Rico Courts to make a determination as to the Hague Convention and ICARA issues. (*See* Exhibits 5-8). *See also* Puerto Rico Court of Appeals Resolution for case KLAN202001039 at p. 3 (Docket No. 34-1)("Throughout the judicial process, there was an exchange of motions between the parties; notwithstanding, Appendices 10, 11, 15, 26, 27, 33 and 35 are motions related to the controversy regarding the jurisdiction, applicability and remedies of the Hague Convention, *supra*."

ICARA, 42 U.S.C. §§ 11601 et seq., implements the Hague Convention in the United States. ICARA vests state and federal courts with concurrent jurisdiction over claims under the Convention. 42 U.S.C. § 11603(a). ICARA further provides "the court in which an action is brought under subsection (b) of this section shall decide the case in accordance with the Convention." 42 U.S.C. § 11603(d). *Yang v. Tsui, supra*, 201.

Colorado Abstention

Under exceptional circumstances, a federal district court may abstain from adjudicating a controversy "for reasons of wise judicial administration." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976). Before determining that abstention is warranted, the district court must first determine whether the state and federal proceedings are parallel. *New Beckley Mining Corp. v. International Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id*.

It is undisputed that the parties litigating in both the state and federal court are the same, as Respondent and Petitioner vigorously argued the Hague Convention and ICARA before the Puerto Rico Court proceedings by filing petitions and order requests under the Hague Convention (Docket No. 18, Exhibits 1-3). Once a court determines that the proceedings in state court and federal court are parallel, the court must consider those factors set forth in *Colorado River* and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), to determine if the circumstances are such that it is proper for the court to abstain. The court is to balance a number of factors: (1) Jurisdiction Over the Res; (2) Inconvenience of the Federal Forum; (3) The Desirability of Avoiding Piecemeal Litigation; (4) The Order in which Jurisdiction Was Obtained;

(5) The Rule of Decision; (6) Inadequacy of the State Court Proceedings to Protect the Federal Litigant's Rights; and (7) Forum Shopping. *Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364 (9th Cir. 1990) (citing *Colorado River* and *Moses H. Cone Mem'l Hosp.*).

1. Jurisdiction over the res: The first factor is neutral for the Court's analysis because Petitioner's claim under the Hague Convention does not involve any physical property, hence the first factor does not apply to the instant case.

2. Inconvenience of the federal forum: The geographic location of the federal forum is no less convenient to either party than the state forum as both forums are in San Juan, Puerto Rico. Therefore, this factor carries no weight.

*Morisada Corp. v. Beidas*, 939 F. Supp. 732, 738 (D. Haw. 1995).

3. Desirability of avoiding piecemeal litigation: Danger exists that piecemeal litigation might occur. "As the court in *Beidas* expressed, res judicata does not apply until there is a final judgment on appeal. This means that even if the state court decides this matter first, the federal court must continue to entertain it until a final judgment on appeal is reached. This significantly increases the amount of time in which the case may remain in federal court." *Beidas*, 939 F. Supp. at 737. (Docket No. 18) Furthermore, the federal court cannot adjudicate the issues of domestic relations presented to the state court on account of the domestic relations exception to the federal court's jurisdiction. For the above-mentioned reasons, the factor weighs in favor of abstention.

4. The Order in which Jurisdiction was Obtained: This factor is not measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in each action. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21. In addition to the fact that the federal petition was filed later and that virtually no activity in this federal case has occurred, the issues are within the

arguments of both parties at the state level particularly as to Hague and ICARA. Accordingly, this factor weighs heavily in favor of abstention.

5. The Rule of Decision: Although the enabling legislation is federal core controversy since the controversy involves a treaty ratified by Congress, the statute specifically provides for the issues to be heard in either state or federal court. As the instant issues are equally appropriate for adjudication in state as well as federal court, this factor should be considered neutral.

6. Inadequacy of the State Proceedings to Protect the Federal Litigant's Rights: As the federal enabling legislation provides for an ICARA petition to be heard in either federal or state court, there is no concern that Petitioner's federal rights will be inadequately protected in state court. Therefore, this factor does not weigh in favor of either party.

7. Forum Shopping: The Respondent continues to litigate her Hague Convention and ICARA petition before the Puerto Rico Court for nine (9) months prior to Petitioner filing his Petition before the federal court.

    The exhibits in the record reflects that the Petitioner submitted himself to the jurisdiction of the Puerto Rico Courts and requested remedies under the Hague Convention and ICARA (Docket No. 18 Exhibits 2-3). Petitioner, as the Court understands, chose to file in federal court mainly because the issues of the Hague Convention and ICARA were not considered by the First Instance Court of San Juan. Notwithstanding, the case before the state court has raised causes of action within the pleadings of both parties related to the Hague Convention and ICARA prior to the filing of the instant Complaint.

**Conclusion**

The Hague Convention and the ICARA law of the instant petition has been raised by both parties, is currently being litigated in the Puerto Rico Courts for the past fourteen (14) months and is included in the Resolution of the Puerto Rico Court of Appeals to wit, "[t]he CFI is instructed to determine whether it has jurisdiction over the matter o[r] the authority to address the whole matter under the protection of the Hague Convention on the Civil Aspects of International Child Abduction and the 'International Child Abduction Remedies Act.'" (Docket No. 34-1). Hence, pursuant to the Abstention Doctrine, the Court **GRANTS** Respondent's Motion to Dismiss **without prejudice** at Docket No. 18.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 4th day of May, 2021.

*/s/ Daniel R. Dominguez*
Daniel R. Dominguez
United states District Judge